IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| WILLIAM L. CHESTNUTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 14-3352 |
| ) | |
| RAMON ESCAPA, MARITA ) | |
| GRIFFITH, SONYA MALLORY, ) | |
| and MARVIN REED, ) | |
| ) | |
| Defendants. ) | |

OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause comes before the Court on the Motion to Dismiss Amended Complaint (d/e 20) filed by Defendants Ramon Escapa, Marita Griffith, and Sonya Mallory.  Plaintiff William L. Chestnutt concedes that Defendant Escapa is entitled to prosecutorial immunity.  Therefore, the claims against Defendant Escapa are dismissed.  Because Plaintiff's claims against Defendants Griffith and Mallory are barred by the Rooker-Feldman doctrine and fail to state a claim for relief, the claims against them are also dismissed.

# I. BACKGROUND

In April 2012, the State of Illinois filed a petition for the adjudication of wardship of Plaintiff's two children in the Circuit Court of Schuyler County, Illinois. See People v. Chestnutt, 2014 IL App (4th) 140278-U (Aug. 21, 2014) (unpublished opinion).[1] The petition alleged that the children were neglected because they lived in an environment injurious to their welfare. Id.

In July 2012, the state trial court adjudicated the minors neglected. The court found that Plaintiff had been involved in domestic violence against his wife, that his children had been involved, and that Plaintiff refused to follow Illinois Department of Children and Family Services (DCFS) and court orders barring contact. Id. In August 2012, at the dispositional hearing, the court granted guardianship of the children to DCFS. Id.

---

[1] The Court can take judicial notice of the state court appellate decision without converting the motion to dismiss into a motion for summary judgment. See 4901 Corp. v. Town of Cicero, 220 F. 3d 522, 527 n. 4 (7th Cir. 2000) (district court could take judicial notice of state court order of dismissal and accompanying settlement agreement without converting the motion to dismiss into a motion for summary judgment; Henson v. SCS Credit Servs., 29 F. 3d 280, 284 (7th Cir. 1994) (finding that the district could consider public court documents filed in an earlier state court case when deciding the defendants' motions to dismiss without converting the motions to dismiss into motions for summary judgment).

On November 20, 2013, the State filed a petition to terminate Plaintiff's parental rights. Id. Following a January 2014 termination hearing at which Plaintiff was present, the trial court found the State proved by clear and convincing evidence that Plaintiff was unfit because he failed to make reasonable efforts to correct the conditions that were the basis for the removal of the children, failed to make reasonable progress toward the return of the children within any nine-month period following the date of adjudication and disposition, and was depraved due to his five felony convictions Id. ¶¶ 15, 23; see 750 ILCS 50/1(D)(m)(i), (D)(m)(ii), and (D)(i). In March 2014, after a best-interests hearing at which Plaintiff was present, the trial court terminated Plaintiff's parental rights. Id.

Plaintiff appealed. On August 21, 2014, the appellate court affirmed. Id.

In November 2014, Plaintiff filed a pro se Complaint in this Court and requested that counsel be appointed to represent him. The Court recruited counsel for Plaintiff. On March 23, 2015, counsel for Plaintiff filed a four-count Amended Complaint (d/e 19).

In the Amended Complaint, Plaintiff alleges that Defendant Mallory was the DCFS case worker personally involved with Plaintiff's family. Am. Compl., Count I, ¶¶ 2, 3. Plaintiff was given a list of requirements with which he would have to comply to regain custody and control of his minor children. Count II, ¶ 4; Count III, ¶ 4; Count IV, ¶ 4. Plaintiff alleges that he kept Defendant Mallory "apprised of his whereabouts and the availability or lack of availability of the resources required for him to be able to work toward reunion with his children." Count I, ¶ 5.

Shortly after the commencement of the judicial proceedings, Plaintiff was incarcerated. Am. Compl., Count I, ¶ 4. Beginning in December 2012, Plaintiff was incarcerated at a work camp facility in Pittsfield, Illinois (Pittsfield Work Camp). Count II, ¶ 5; Count III, ¶ 5; Count IV, ¶ 5. While at the Pittsfield Work Camp, Plaintiff kept in contact with Defendant Mallory and made efforts to continue obtaining the services DCFS indicated he was required to obtain. Count II, ¶¶ 6, 7; Count III, ¶ 6; Count IV, ¶ 6. However, the Pittsfield Work Camp did not offer the services required by DCFS. Count II, ¶ 8; Count III, ¶ 7; Count IV, ¶ 7.

In early 2013, Plaintiff was transferred from the Pittsfield Work Camp to a facility in Jacksonville, Illinois, because Plaintiff required treatment for non-Hodgkin's lymphoma. Am. Compl., Count II, ¶ 9; Count IV, ¶¶ 8, 9. Although the Jacksonville facility offered the services Plaintiff needed, such as counseling and educational services, Plaintiff was placed at the bottom of the list because he was in the infirmary. Count II, ¶¶ 10, 11; Count IV, ¶¶ 8, 10. Plaintiff continued to maintain contact with Defendant Mallory and kept her apprised of his inability to complete the required services. Count II, ¶ 12.

In November 2013, Plaintiff was released from incarceration. Am. Compl., Count I, ¶ 7; Count II, ¶ 13; Count III, ¶ 8; Count IV, ¶ 11. Upon release, Plaintiff began promptly completing services as required. Count I, ¶ 8; Count II, ¶ 14; Count III, ¶ 9; Count IV, ¶ 12. Defendant Escapa, the Schuyler County State's Attorney, commenced the proceeding to terminate Plaintiff's parental rights. Count I, ¶ 9; Count II, ¶ 15; Count III, ¶ 10; Count IV, ¶ 13. The underlying reason for the termination proceeding was Plaintiff's failure to complete the required services. Count III, ¶ 11; Count IV, ¶ 14.

In Count I, Plaintiff alleges that Defendant Mallory's actions led to a violation of Plaintiff's protected right to parent his children. Am. Compl., Count I, ¶ 10.  Specifically, Plaintiff claims that Defendant Mallory violated Plaintiff's civil rights by determining Plaintiff made unsatisfactory progress toward reunification with his children despite there being no way for the service plan goals to be achieved.  Count I, ¶ 11.

In Count II, Plaintiff alleges that the actions of Defendant Escapa led to a deprivation of Plaintiff's protected right to parent his children.  Am. Compl., Count II, ¶ 17.  Plaintiff also alleges that Defendant Griffith, DCFS Regional Counsel, violated Plaintiff's civil rights by "allowing him additional time to make reasonable progress toward the return of his children after he was released from prison" (although it appears that this is a scrivener's error and Plaintiff means that Defendant Griffith violated his constitutional rights by "<u>not</u> allowing" him additional time to make reasonable progress).  Count II, ¶ 18.

In Counts III and IV, Plaintiff alleges that Defendant Marvin Reed, the Warden for the Pittsfield Work Camp, denied Plaintiff the ability to complete the required services because Reed made the

decision not to offer the courses and counseling required by DCFS. Am. Compl., Count III, ¶¶ 2, 12; Count IV, ¶¶ 2, 15. Defendant Reed has not yet been served and is not a party to the pending Motion to Dismiss.[2]

Plaintiff alleges he has suffered great emotional distress as a result of being deprived of his right to parent his children. Am. Compl., Count I, ¶ 12; Count II, ¶ 19; Count III, ¶ 13; Count IV, ¶ 16. As relief, Plaintiff seeks damages in excess of $50,000, an order requiring Defendant Mallory and Defendant Griffith to allow additional time for the completion and satisfaction of the service plan, an order allowing Plaintiff the opportunity to complete the service plans as required, and an order requiring the Pittsfield Work Camp to offer the classes required by DCFS. Prayer for Relief, Counts I, II, III, IV.

## II. STANDARDS OF REVIEW

Defendants move to dismiss under (12)(b)(6) of the Rules of Civil Procedure. However, Defendants also assert that this Court lacks subject-matter jurisdiction, which implicates Rule 12(b)(1).

---

[2] United States Magistrate Judge Tom Schanzle-Haskins has directed Plaintiff to show cause why the case should not be dismissed as to Defendant Reed for want of prosecution. See August 13, 2015 Text Order.

When considering a Rule 12(b)(1) motion, this Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. Long v. Shorebank Dev. Corp., 182 F.3d 548, 554 (7th Cir. 1999). The Court may view any evidence submitted on the issue of jurisdiction to determine whether subject matter jurisdiction exists. Id. However, the plaintiff bears the burden of proving the jurisdictional requirements have been met. Center for Dermatology & Skin Cancer, Ltd. v. Burwell, 770 F.3d 586, 588-89 (7th Cir. 2014).

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. Christensen v. Cnty. of Boone, 483 F.3d 454, 458 (7th Cir. 2007). To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing he is entitled to relief and giving the defendants fair notice of the claims. Tamayo v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008).

When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in her favor. Id. However, the complaint must set forth facts that plausibly demonstrate a claim

for relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007). Plausibility means alleging factual content that allows the Court to reasonably infer that the defendants are liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Merely reciting the elements of a cause of action or supporting claims with conclusory statements is insufficient to state a cause of action. Id.

### III. ANALYSIS

As an initial matter, Defendant Escapa argues that he is entitled to prosecutorial immunity. Memorandum at 11 (d/e 21). Plaintiff concedes that Defendant Escapa is entitled to prosecutorial immunity from damages. Resp. at 2 (d/e 23). Because Plaintiff only seeks damages from Defendant Escapa, the Court finds that Defendant Escapa is entitled to prosecutorial immunity, and the claims against him are dismissed. See Imbler v. Pachtman, 424 U.S. 409, 431 (1976) (a prosecutor is immune from a civil suit for damages when "initiating a prosecution" and "presenting the State's case").

Defendants Mallory and Griffith raise three arguments in their Motion to Dismiss Plaintiff's Amended Complaint: (1) Plaintiff

has failed to state a claim upon which relief may be granted; (2) this Court is without jurisdiction pursuant to the Rooker-Feldman doctrine; and (3) Plaintiff is collaterally estopped from litigating the issue of the termination of his parental rights. The Court will address the jurisdictional argument first.

A.     **Plaintiff's Claims are Barred by the Rooker-Feldman Doctrine**

The Rooker-Feldman doctrine takes its name from two United States Supreme Court cases in which the losing party in state court filed a suit in federal court complaining of an injury caused by the state court judgment rendered before the district court proceedings commenced and seeking review and rejection of the state court judgment. See Rooker v. Fid. Trust Co., 263 U.S. 413 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983). The United States Supreme Court held that the district courts lacked subjection-matter jurisdiction to decide the cases because only the United States Supreme Court has jurisdiction to review a state court judgment. Rooker, 263 U.S. at 416; Feldman, 460 U.S. at 476; see also Exxon Mobile Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 291 (2006) (citing 28 U.S.C. § 1257).

The Rooker-Feldman doctrine bars federal claims in two circumstances: where (1) a plaintiff requests that the federal district court overturn an adverse state court judgment; or (2) the claims were not raised in state court or do not, on their face, require review of the state court's decision but the claims are "inextricably intertwined" with the state court judgment. Brown v. Bowman, 668 F.3d 437, 442 (7th Cir. 2012). When determining whether a claim is inextricably intertwined with the state court judgment, the district court considers the cause of the alleged injury. Id. If the claim alleges the injury was caused by the state court judgment, the claim is inextricably intertwined. If the claim alleges an independent prior injury that the state failed to remedy, the claim is not inextricably intertwined and is not barred by the Rooker-Feldman doctrine. Brown, 668 F.3d at 442; see also Long, 182 F.3d at 555 (finding that the plaintiff's claims alleging violations of the Fair Debt Collection Practices Act were independent from the eviction proceeding litigated in state court and were not barred by the Rooker-Feldman doctrine).

However, if the federal claim is inextricably intertwined with the state court judgment, the claim is barred under Rooker-

Feldman only if the plaintiff had a reasonable opportunity to raise the issue in state court. Brown, 668 F. 3d at 442. If the plaintiff could not have raised the claim in state court, the claim is not barred by Rooker-Feldman. Id. Moreover, "the fact that the plaintiff's pursuit of his federal claims could ultimately show that the state court judgment was erroneous [does not] automatically render Rooker-Feldman applicable." Long, 182 F.3d at 556.

In response to the Motion to Dismiss, Plaintiff argues that his claims are not barred by the Rooker-Feldman doctrine. Plaintiff asserts that the injury was not caused by the state court judgment but by being denied additional time to make reasonable progress toward the return of his children after he was released from prison. Resp. ¶ 6. Plaintiff further claims that he is not seeking to re-litigate the termination of his parental rights. Id. ¶ 7.

In the Amended Complaint Plaintiff seeks essentially two forms of relief. First, Plaintiff asks this Court to issue an order requiring that he be given additional time to complete the service plan. This type of relief would require this Court to take action that would essentially overturn the state court's judgment. Because Plaintiff's parental rights have been terminated, any order

by this Court requiring that Plaintiff be given additional time to complete the service plan would require the state court judgment be vacated. Therefore, any claim by Plaintiff that seeks this relief is barred by the Rooker-Feldman doctrine. See Rainey v. Samuels, 130 F. App'x 808, 809 (7th Cir. 2005) (unpublished) (finding the claim "barred in major part by the Rooker-Feldman doctrine" where the injury about which the plaintiff complained—termination of parental rights—was inflicted by the state court's judgment and the relief sought was cancellation of the judgment).

      Plaintiff also seeks money damages for alleged constitutional violations committed by Defendants Mallory and Griffith. Plaintiff alleges that Defendant Mallory violated his civil rights by determining that he made unsatisfactory progress toward reunification when there was no way he could achieve the service plan goals. He alleges that Defendant Griffith violated his civil rights by not allowing him additional time to make progress after his release from prison. However, the harm alleged is the loss of his right to parent his children, which was caused by the court order terminating his parental rights. See Golden v. Helen Sigman & Ass's, Ltd., 611 F.3d 356, 362 (7th Cir. 2010) (finding that the

plaintiff's claim that he lost custody of his child based, in part, on the bias of the court-appointed child representative was barred by the Rooker-Feldman doctrine because the only injury the plaintiff alleged to have suffered—alienation of the child's affection and a reduction of his custodial rights—flowed from the state-court custody order). As such, this claim is inextricably intertwined with the state court judgment. And, because Plaintiff had a reasonable opportunity to raise the claim in state court, and did so, the claim is barred by Rooker-Feldman. See People v. Chestnutt, 2014 IL App (4th) 140278-U, ¶ 20 (noting Plaintiff's testimony before the trial court that he could not participate in services while in prison); ¶¶ 31-34 (rejecting Plaintiff's argument that he was failed by the system because he could not take classes while in prison).

B.  **Even if Rooker-Feldman Does Not Bar the Damages Claim, Plaintiff has Failed to State a Claim for Relief**

The Court recognizes that there are some cases that hold that a plaintiff can sue to vindicate a right independent of the state court decision and, therefore, not implicate the Rooker-Feldman doctrine. Nesses v. Shepard, 68 F.3d 1003, 1005 (7th Cir. 1995) (holding that Rooker-Feldman doctrine does not apply where the

plaintiff alleges that the people involved in the state court decision violated an independent right of the plaintiff); <u>Brokaw v. Weaver</u>, 305 F.3d 660, 665 (7th Cir. 2002) (finding that the <u>Rooker-Feldman</u> doctrine did not apply to the plaintiff's claim that the people involved in the decision to remove her from her home and parents and subject her to the custody of the DCFS violated her federal constitutional rights).  Even if Plaintiff's claims against Defendants Mallory and Griffith were not barred by the <u>Rooker-Feldman</u> doctrine, the Court would also find that Plaintiff failed to state a claim for relief.

To state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) deprivation of a right secured by the Constitution or laws of the United States; and (2) the alleged deprivation was committed by a person acting under the color of state law. <u>Rodriguez v. Plymouth Ambulance Serv.</u>, 577 F.3d 816, 822 (7th Cir. 2009).  Plaintiff has identified the applicable constitutional right as the right to parent his children.  <u>See</u> Am. Compl., Count I, ¶ 10.

Parents have a fundamental right to make decisions concerning the care, custody, and control of their children

pursuant to the Due Process Clause of the Fourteenth Amendment. Troxel v. Granville, 530 U.S. 57, 66 (2000). This fundamental right is not absolute, however, and "must be balanced against the state's interest in protecting children from abuse." Siliven v. Ind. Dep't of Child Servs., 635 F.3d 921, 928 (7th Cir. 2011). Nonetheless, "[t]he Due Process Clause of the Fourteenth Amendment prohibits the government from interfering in familial relationships unless the government adheres to the requirements of procedural and substantive due process." Croft v. Westmoreland Cnty. Children and Youth Servs., 103 F. 3d 1123, 1125 (3d Cir. 1997).

The appropriate standard for stating a substantive due process claim in this context is not clear. Some courts hold that when abusive executive action[3] has been alleged, liability attaches only where the executive action is "so ill-conceived or malicious that it 'shocks the conscience.'" Miller v. City of Phila., 174 F.3d 368, 375 (3d Cir. 1999) (involving a substantive due process claim against a Department of Human Services social worker) (quoting

---

[3] DCFS is under the Executive Branch. See www.cyberdriveillinois.com/publications/handbook/execbranch.pdf (last visited August 18, 2015).

Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).  The Seventh Circuit has held that the "shocks the conscience" test does not apply in the context of taking and holding a child in protective custody.  Hernandez ex rel. Hernandez v. Foster, 657 F.3d 463, 479 (7th Cir. 2011) (wherein the plaintiffs alleged that the defendants continued to hold their child in protective custody when they knew they had no reason to do so).  That is, where a party challenges the seizure and placement of a child in protective custody, the seizing party must have had reasonable suspicion of past or imminent danger of abuse.  Id.

In this case, Plaintiff is not challenging that his children were taken into and held in protective custody, which suggests that Hernandez would not apply.  Nonetheless, regardless of the appropriate standard, Plaintiff simply alleges that Defendant Mallory was wrong to conclude that Plaintiff did not make satisfactory progress toward reunification and Defendant Griffith should have given Plaintiff more time to complete services.  At most, Plaintiff's allegations suggest negligence by Defendants Mallory and Griffith in their duties.  Negligence does not give rise to liability under § 1983.  Lewis v. Anderson, 308 F.3d 768, 773

(7th Cir. 2002). Moreover, Plaintiff does not allege any intentional conduct by Defendants, nor can such allegations be inferred from the pleadings. See Rangel v. Reynolds, 607 F. Supp. 2d 911, 924 (N.D. Ind. 2009) (finding that, to state a plausible § 1983 claim, the plaintiff must allege facts showing that the defendant intentionally and unlawfully deprived the plaintiff of a constitutional right). Therefore, the Court finds that, even if Plaintiff's claims are not barred by the Rooker-Feldman doctrine, Plaintiff has not stated a cognizable substantive due process claim against Defendants Mallory and Griffith.

### IV. CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss (d/e 20) is GRANTED. The claim against Defendant Escapa is DISMISSED because he is entitled to prosecutorial immunity on the claim Plaintiff brought against him. The claims against Defendants Griffith and Mallory are DISMISSED for lack of subject-matter jurisdiction. In the alternative, Plaintiff has failed to allege a § 1983 substantive due process claim against Defendants Griffith and Mallory. The case remains pending against Defendant Reed subject to Plaintiff showing good cause for

the failure to serve Defendant Reed. In addition, the Court grants Plaintiff until September 4, 2015 to file a second amended complaint should Plaintiff choose to do so.

ENTER: August 19, 2015

FOR THE COURT:

                              s/Sue E. Myerscough
                              SUE E. MYERSCOUGH
                              UNITED STATES DISTRICT JUDGE